# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 5:03-cr-30054 |
| v. | |
| MARK WAYNE WOODS, | MEMORANDUM OPINION & ORDER |
| *Defendant.* | JUDGE NORMAN K. MOON |

Defendant Mark Wayne Woods has filed motions for compassionate release, Dkts. 283; 290.

Woods, 48, is currently incarcerated at FCI Beckley. Woods argues that his age, asthma, and hypertension place him at a high risk of complications from possible COVID-19 infection. Dkt. 290 at 1, 9. Woods also argues that the 80-year consecutive sentence he is serving on four "stacked" § 924(c)(1) counts constitutes an "extraordinary and compelling reason[]" warranting relief under 18 U.S.C. § 3582(c)(1)(A)(i) after the enactment of the First Step Act. *Id.* at 19–21. The United States opposes Woods's motion. Dkt. 295. While the United States agrees that Woods has exhausted administrative remedies, *id.* at 9, it disputes that Woods's circumstances present extraordinary and compelling reasons for release and argues that the 18 U.S.C. § 3553(a) factors weigh against his release, *id.* at 9–28.

For the following reasons, the Court will grant Woods's motion for compassionate release and reduce his sentence by roughly 66 years, but it will deny Woods's motion with respect to his immediate release from custody.

## BACKGROUND

Woods is serving a sentence of 135 months' imprisonment for conspiracy to possess with intent to distribute 50 grams of methamphetamine, in violation of 21 U.S.C. § 846, and a total of 960 consecutive months' (80 years') imprisonment for four counts of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1).[1] Dkts. 46; 51; 282. Woods has served 215 months (about 18 years)—roughly 20% of his sentence—and has a projected release date of March 12, 2081.[2]

## ANALYSIS

### 1.   Exhaustion of Administrative Remedies

Before Congress passed the First Step Act, only the Bureau of Prisons ("BOP") could move the Court for compassionate release of an incarcerated defendant for "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). Because § 603(b) of the First Step Act amended that provision, "defendants now may file motions for sentence modifications on their own behalf, so long as they first apply to the BOP." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020) (citing Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018)).

There is no dispute that Woods exhausted his administrative remedies, as § 3582(c)(1)(A) requires. On June 29, 2020, Woods filed a written request for relief with the warden of FCI Beckley. Dkt. 290-4. The Warden denied his request on July 9, 2020. Dkt. 290-5. The United

---

[1] Woods is also serving sentences of 12 months' imprisonment on each of three counts of possessing methamphetamine, in violation of 21 U.S.C. § 844(a), and sentences of 120 months' imprisonment on each of four counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), all running concurrent with his 135-month sentence on the conspiracy count. *See* Dkts. 46; 51; 282.

[2] *See BOP Inmate Locator*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 19, 2021).

States does not contest that Woods has satisfied § 3582(c)(1)(A)'s exhaustion requirement. Dkt. 295 at 9.

Accordingly, the Court agrees with the parties that Woods exhausted his administrative remedies.

### 2. Extraordinary and Compelling Reasons

Generally, "[t]he court may not modify a term of imprisonment once it has been imposed." § 3582(c). But under § 3582(c)(1)(A), the court

> may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

Section 1B1.13 of the Sentencing Commission's Guidelines Manual governs motions by the Director of the Bureau of Prisons ("BOP") under § 3582(c)(1)(A). It limits "extraordinary and compelling reasons" to three specific categories—Application Notes 1(A) through (C), covering a defendant's medical condition, age, and family circumstances—as well as a catch-all category, Application Note 1(D), allowing the BOP to identify "other reasons" that may qualify. However, the Fourth Circuit recently held that there "is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3852(c)(1)(A), and as a result, district courts are 'empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (internal quotation marks and citation omitted) (emphasis in original).

3

### i. COVID-19

Woods suffers from asthma, which he treats with an inhaler as needed, not on daily basis. Dkts. 290 at 9; 290-10. Woods also suffers from high blood pressure, or hypertension,[3] which he treats with prescription blood pressure medication taken daily. Dkts. 290 at 9; 290-10. Woods claims that his asthma and hypertension make him susceptible to contracting COVID-19 and put him at a higher risk of life-threatening conditions if he contracts COVID-19. Dkt. 290 at 9.

The United States disagrees that Woods's health conditions put him at particularized risk of contracting COVID-19 or at higher risk of severe illness if he does contract COVID-19. Dkt. 295 at 10.

The Centers for Disease Control and Prevention ("CDC") report that "[t]he risk for severe illness with COVID-19 increases with age" and that "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years and older."[4] The CDC also advises that "[c]hronic lung diseases, including . . . asthma (moderate-to-severe)" and "[h]eart conditions such as . . . possibly high blood pressure (hypertension)" "can make you more likely to get severely ill from COVID-19."[5] Although Woods, 48, may be at slightly higher risk of severe illness from COVID-19 than a younger person, he is not in the highest-risk 65-years-or-older category. In addition, Woods does not provide evidence that his asthma is moderate or severe. Instead, BOP medical records show

---

[3] *See also Facts About Hypertension*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/bloodpressure/facts.htm (last visited Apr. 19, 2021) (defining hypertension as a systolic blood pressure of over 130 mm Hg or a diastolic blood pressure of over 80 mm Hg).

[4] *Older Adults*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Apr. 19, 2021) (emphasis removed).

[5] *People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 19, 2021) (emphasis removed).

that his asthma is "well controlled" with occasional inhaler use. Dkt. 290-10 at 1. Similarly, he "tolerates [his prescription blood pressure medication] well," and his hypertension appears to be controlled, with his blood pressure fluctuating between normal and elevated at recent clinical visits.[6] Dkt. 290-10 at 1, 17 (noting "BP is within clinical target parameters").

BOP currently reports 1 active inmate case, 1 active staff case, 0 inmate deaths, and 220 inmates recovered from COVID-19 at FCI Beckley.[7] In addition, BOP reports that 176 staff and 688 inmates at FCI Beckley have been fully inoculated.[8] FCI Beckley houses 1,564 inmates.[9]

Taken together, Woods's medical conditions, even in the context of his incarceration at FCI Beckley during the ongoing COVID-19 pandemic, do not alone show "extraordinary and compelling" reasons for release under § 3582(c)(1)(A).

### ii. "Stacked" § 924(c) Sentences

Woods also argues that the 80-year consecutive sentence he is serving on four "stacked" § 924(c)(1) counts constitutes an "extraordinary and compelling" reason warranting relief. Dkt. 290 at 19–21.

In § 403(a) of the First Step Act, Congress amended 18 U.S.C. § 924(c)(1)(C) to clarify that the 25-year mandatory consecutive sentence for a "second or subsequent count of conviction"

---

[6] *See Facts About Hypertension*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/bloodpressure/facts.htm (last visited Apr. 19, 2021) (defining normal blood pressure, elevated blood pressure, and hypertension).

[7] *COVID-19 Cases*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 19, 2021).

[8] *COVID-19 Vaccine Implementation*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 19, 2021).

[9] *FCI Beckley*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/bec/ (last visited Apr. 19, 2021).

under § 924(c)(1) could be imposed only once a "prior conviction under [§ 924(c)(1)] has become final"—not in the same case in which the first § 924(c)(1) conviction was obtained. Pub. L. No. 115-391, § 403, 132 Stat. at 5221–22. Under § 403(b), Congress made this amendment applicable to any offense committed before the First Step Act's enactment for which a sentence had not yet been imposed. *Id.* at 5222. The First Step Act says nothing about the retroactive application of § 403(a) to defendants sentenced before its enactment.

Because "[t]he First Step Act's clarification of § 924(c) resulted in not just any sentencing change, but an exceptionally dramatic one," the Fourth Circuit recognized in *McCoy* that "stacked" § 924(c) sentences can constitute an "extraordinary and compelling" reason for relief under § 3582(c)(1)(A).[10] 981 F.3d at 285. The court pointed to "two distinct features" of § 924(c) sentences relevant to applying the "extraordinary and compelling" reason standard: (1) "the sheer and unusual length of the sentences,"[11] particularly in comparison to the "national average for a

---

[10] The Court previously ordered that Woods's motion for compassionate release be held in abeyance pending the Fourth Circuit's decision in *McCoy*. Dkt. 301.

[11] The Senate Report accompanying The Comprehensive Crime Control Act of 1984, which originally created 18 U.S.C. § 3582(c) and made compassionate relief motions subject to BOP control, suggests that sentence modifications may be "justified by changed circumstances," such as "cases of severe illness, cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment." S. Rep. No. 98-225, at 55–56 (1984). But according to an April 2013 report by the Department of Justice's Office of the Inspector General, "although the BOP's regulations and Program Statement permit non-medical circumstances to be considered as a basis for compassionate release, the BOP routinely rejects such requests and did not approve a single nonmedical request during the 6-year period of [DOJ's] review." U.S. DEP'T OF JUSTICE, *The Federal Bureau of Prisons' Compassionate Release Program* ii, https://oig.justice.gov/reports/2013/e1306.pdf (last visited Apr. 20, 2021). In the First Step Act, "Congress responded by eliminating the Bureau of Prisons' [exclusive] gatekeeping function over compassionate releases." *United States v. Maumau*, No. 2:08-cr-00758, 2020 WL 806121, at *6 (D. Utah Feb. 18, 2020).

federal murder sentence in fiscal year 2018[, which] was 291 months," or just over 24 years,[12] and (2) the "gross disparity between those sentences and the sentences Congress now believes to be an appropriate penalty for [a defendant's] conduct." *Id.* (internal quotation marks and citations omitted).

Both features of "stacked" § 924(c) sentences apply here in the wake of the First Step Act. First, Woods's 80-year sentence on his four § 924(c) counts is nearly four times the national average federal murder sentence in fiscal year 2020 of just over 21 years.[13] Such a sentence qualifies as one of "sheer and unusual length." *Id.* Second, because Woods did not have a "final" § 924(c) conviction at the time of sentencing, he would face a consecutive sentence of 20 years rather than 80 years on his four § 924(c) counts if he were sentenced today. The 60-year difference between Woods's sentence and the sentence that "Congress now believes to be an appropriate penalty for [such] conduct" is a "gross disparity" indeed. *Id.*

Under these circumstances, the Court finds that Woods's 80-year consecutive sentence on four § 924(c) counts is an "extraordinary and compelling" reason warranting a sentence reduction.

### 3. Section 3553(a) Factors

Even if the Court finds that extraordinary and compelling reasons support a sentence reduction, it must still "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, — F.3d —, 2021 WL

---

[12] The national average for a federal murder sentence has since gone down. In fiscal year 2020, "[o]ffenders convicted of murder received the longest terms of confinement at 255 months on average," or just over 21 years. U.S. SENTENCING COMM'N, *Fiscal Year 2020: Overview of Federal Criminal Cases* 9 (Apr. 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/FY20_Overview_Federal_Criminal_Cases.pdf (last visited Apr. 19, 2021).

[13] See *supra* n.11.

1216543, at *6 (4th Cir. 2021) (noting that a district court's task is "to determine whether the § 3553(a) factors counsel[] against a sentence reduction in light of the new, extraordinary circumstances identified," not to "assess the correctness of the original sentence it imposed").

The Government argues that the § 3553(a) factors weigh against Defendant's release. Dkt. 295 at 26–28. However, the Court has considered the § 3553(a) factors and finds that they support a sentence reduction.

Woods's leadership of a methamphetamine conspiracy and possession of firearms in furtherance of that conspiracy are serious offenses. *See United States v. Woods*, 271 F. App'x 338, 340 (4th Cir. 2008) (noting that Woods "led the family drug ring," which involved "exchang[ing] drugs and cash" as well as "drugs and guns"). Still, after the First Step Act's amendments to § 924(c), Woods would face a total of 240 consecutive months' imprisonment for his four § 924(c) counts if he were sentenced for the first time today. Together with the 135-month sentence on the drug conspiracy count, his total sentence would be 375 months. Woods has already been incarcerated for 215 months, or 57% of that time. Requiring Woods to serve out his full original sentence of 1,095 months (including 960 months on the § 924(c) counts alone) "would be disproportionate to both the seriousness of the offense and to what Congress now deems appropriate for this kind of conduct." *McCoy*, 981 F.3d at 279 (internal quotation marks and citation omitted) (affirming district court's decision to reduce sentence of 421 months to time served of roughly 205 months). Further, many defendants have received similar sentence reductions following the First Step Act's clarification of § 924(c). *See, e.g.*, *United States v. Maumau*, — F.3d —, 2021 WL 1217855, at *1–*5 (10th Cir. 2021) (affirming district court's decision to reduce sentence of 660 months to time served of roughly 120 months); *United States v. Arey*, 461 F. Supp. 3d 343, 352 (W.D. Va. 2020) (reducing sentence of 895 months to 390

8

months); *United States v. Decator*, 452 F. Supp. 3d 320, 326 (D. Md. 2020) (reducing sentence of 633 months to time served of over 300 months); *United States v. Redd*, 444 F. Supp. 3d 717, 729–30 (E.D. Va. 2020) (reducing sentence of 603 months to 243 months).

Moreover, granting Woods's request for a sentence reduction will avoid an unwarranted sentence disparity between Woods and his co-defendant—his brother Bruce Woods.[14] To be sure, the brothers' criminal records and offense conduct were not identical. Mark Woods was held responsible for 568 grams of methamphetamine and had a criminal history category of IV and, Dkt. 159 ¶¶ 9, 14, 40, while Bruce Woods was held responsible for 100 grams of methamphetamine and had a criminal history category of II, Dkt. 158 ¶¶ 9, 14, 36. In addition, Mark was convicted of four § 924(c) counts for possessing a firearm in furtherance of a drug trafficking crime, while Bruce was convicted of just one § 924(c) count for brandishing a firearm in furtherance of a drug trafficking crime. But with respect to these gun counts, Bruce's offense conduct was just as, if not more, serious than Mark's. During a search of a trailer belonging to Franklin Woods, Bruce and Mark's father, Bruce entered the trailer against officers' instructions, grabbed one officer's weapon "several times[,] and attempted to engage the trigger while the gun was aimed at [another officer]." Dkts. 159 ¶ 7; 158 ¶ 7. *See also Woods*, 271 F. App'x at 340. In comparison, one witness testified at trial that he "traded firearms to Mark for drugs," and police officers seized several of these firearms from Franklin's trailer and "green house." *Id.* at 346. Bruce was released from prison on February 5, 2015.[15] But, as noted previously, Mark's projected release date is March 12, 2081—66 years after Bruce's release. Such a sentence disparity is

---

[14] Both brothers were detained on June 5, 2003 and initially sentenced on March 15, 2004. Dkts. 159 at 1; 158 at 1; 45; 46.

[15] *See BOP Inmate Locator*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited Apr. 19, 2021).

9

disproportionate to the differences in Mark and Bruce's criminal histories and offense conduct and is therefore unwarranted.

Woods had an extensive criminal history at the time of his offenses, including a conviction for possession of a sawed-off shotgun and convictions for assault and battery. Dkt. 159 ¶¶ 30, 36–37. Still, he was sentenced to prison for nonviolent crimes, and during his incarceration, he has shown rehabilitation and good post-sentencing conduct. In 2005, Woods earned his GED, showing that the sentence has provided him with needed educational training. Dkt. 290-3. His BOP records reflect three disciplinary infractions—two from over 16 years ago, in 2004, for destroying property and threatening bodily harm to a civilian, and one from 2019 for giving/accepting money without authorization. Dkt. 290-9. The BOP rates his recidivism risk as low. Dkt. 290-8.

After considering the § 3553(a) factors, the Court concludes that a reduction in sentence to a total of 300 months is appropriate. The Court will reduce Woods's sentence to eliminate the "stacked" § 924(c) sentences. Instead of 300 consecutive months' imprisonment on the second, third, and fourth § 924(c) counts, the Court will reduce Woods's sentences on each of those counts to 60 consecutive months' imprisonment. The Court will also reduce Woods's sentences on the drug conspiracy count and each of the four felon-in-possession counts to 60 months' imprisonment. *See Dean v. United States*, 581 U.S. __, 137 S. Ct. 1170, 1 (2017) ("Nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count."). The Court finds that a sentence of 300 months' incarceration is sufficient but not greater than necessary to reflect the seriousness of Woods's offenses, to promote respect for the law, to provide just punishment for Woods's offenses, to deter criminal conduct, and to protect the public from Woods's further crimes.

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court finds that extraordinary and compelling circumstances warrant a reduction in Defendant's sentence and that the § 3553(a) factors support a reduction in sentence.

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motions for compassionate release, Dkts. 283; 290. Specifically, the Court **MODIFIES** Defendant's sentence to 300 months as follows:

1. 60 months as to Count 1; 12 months as to each of Counts 3, 6, and 9; 60 months as to each of Counts 5, 8, 11, and 16; with all said terms to run concurrently.

2. 60 months as to each of Counts 2, 4, 7, and 10, with all said terms to run consecutively to all other counts.

3. All other terms of Defendant's sentence remain the same.

The Court **DENIES** Defendant's request for immediate release from custody.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to Defendant and all counsel of record.

Entered this __21st__ day of April, 2021.

*Norman K. Moon*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE