# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 5:03-cr-30054 |
| v. | <u>MEMORANDUM OPINION</u> |
| MARK WAYNE WOODS, *Defendant.* | JUDGE NORMAN K. MOON |

Before the Court is Defendant's *pro se* 18 U.S.C. § 3582(c)(1)(A)(i) motion for compassionate release. The Court will deny the motion because Defendant's circumstances are not so extraordinary and compelling as to warrant a reduction in sentence.

**I**

**<u>Background</u>**

Defendant is serving a sentence of 300 months' incarceration for drug and firearms offenses. *See* Dkt. 152 (amended judgment); Dkt. 305 (memorandum opinion granting relief under compassionate release statute from stacked § 924(c) sentences and reducing Defendant's term of imprisonment by 66 years). He filed the instant motion for compassionate release on February 7, 2022. *See* Dkt. 306. The federal public defender was immediately appointed, *see* Dkt. 307, but declined to supplement Defendant's filing, *see* Dkt. 311. The matter is now ripe for decision.

The Bureau of Prisons website shows that Defendant is currently housed in FCI Fort Dix, and that his current release date is September 26, 2024.

**Defendant's Proffered Reasons for Early Release**

Defendant argues that extraordinary and compelling reasons warranting early release from his term of imprisonment are presented by certain medical issues creating additional risk to him from the spread of COVID-19. Dkt. 306. Defendant points specifically to his high blood pressure, asthma, high cholesterol, and age (Defendant is approaching 50 years old). *Id*. p. 1. Defendant also notes the impossibility of maintaining social distancing and of taking "other prophylactic measures" in prison as compounding his risk.[1] *Id*.

## II

**Statutory Requirements**

Defendant brings this motion under 18 U.S.C. § 3582(c)(1)(A).[2] Informally known as the compassionate release statute, this provision is understood to "introduce compassion as a factor

---

[1] Defendant also asks for release so that he can care for his ailing mother. *See* Dkt. 306 p. 3. This is, unfortunately, not a ground for compassionate release standing alone. And Defendant does not provide any indication that his mother is currently without care. To the contrary, Defendant indicates that his brother is available to fill that role. *See United States v. Allen*, No. 4:13-cr-00024, 2021 WL 3025458 *2 (W.D. Va. July 16, 2021) (Moon, J.) (declining to find extraordinary and compelling circumstances warranting early release based on defendant's desire to care for his elderly mother where defendant did not allege that he was his mother's only possible caregiver or that she was incapacitated).

[2] The relevant portion of the statute reads as follows.

> **(c) Modification of an Imposed Term of Imprisonment.**
> —The court may not modify a term of imprisonment once it has been imposed except that—
>
> **(1)** in any case—
>
> > **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt

in assessing ongoing terms of imprisonment" by "authorizing a district court to give greater weight to an inmate's personal circumstances—when sufficiently extraordinary and compelling—than to society's interests in the defendant's continued incarceration and the finality of judgments." *United States v. Hargrove*, 30 F.4th 189, 197 (4th Cir. 2022).

A defendant seeking early release vis-à-vis the compassionate release statute faces two threshold barriers. First, he must afford the Bureau of Prisons the opportunity to file a motion on his behalf. *See* § 3582(c)(1)(A) (allowing for a defendant's motion only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier").[3] Second, he must identify extraordinary and compelling reasons that warrant a sentence reduction. *See* § 3582(c)(1)(A)(i). *See also United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (explaining that the statute's requirement that any reduction be consistent with policy statements issued by the Sentencing Commission is inapplicable to a *defendant's* motion for compassionate release because the

---

of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> **(i)** extraordinary and compelling reasons warrant such a reduction
>
> [. . . .]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

[3] The Fourth Circuit recently held that this exhaustion requirement is non-jurisdictional "and thus waived if it is not timely raised." *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2022).

Sentencing Commission has, as of yet, only issued policy statements addressing motions filed by the Bureau of Prisons).

Only after both of these conditions are met is the district court then authorized to consider, in light of the factors set forth in 18 U.S.C. § 3553(a), whether to reduce the defendant's sentence. *See* § 3582(c)(1)(A). *See also High*, 997 F.3d at 186 (clarifying that the consideration of § 3553(a) factors comes into play once a successful showing of extraordinary and compelling circumstances has been made). *See also United States v. Graham*, No. 21-6613, 2022 WL 1172169 *1 (4th Cir. 2022) (relating three step process). Here, the Court may begin and end its analysis with the second condition.

There are as of yet no firm standards to aid district courts in distinguishing extraordinary and compelling circumstances from the ordinary disadvantages of incarceration which our criminal justice system is obliged to tolerate. Instead, the compassionate release statute is understood to empower courts "to consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). The statute itself provides no guideposts. *See High*, 997 F.3d at 186 (acknowledging that extraordinary and compelling reasons "are not statutorily detailed"). And the Fourth Circuit appears disinclined to bound the statutory text with bright-line rules. *See Hargrove*, 30 F.4th at 197 (rejecting a bright-line rule and stating that "[t]he factors applicable to the determination of what circumstances can constitute an extraordinary and compelling reason for release from prison are complex and not easily summarized"); *id*. at 198 (declining to adopt separate bright-line rule and instead concluding "that the inquiry is multifaceted and must take into account the totality of the relevant circumstances").

However, at least in the case of compassionate release motions based on circumstances of medical peril, the meaning of extraordinary and compelling reasons "may not be totally without definition." *High*, 997 F.3d at 186. First, it is clear that serious medical risk to an inmate can be the basis for early release. *Id*. at 185. Second, it now appears established that, with respect to the unique medical risks created by the COVID-19 pandemic, a defendant must show both that (1) the risk of contracting the virus in prison is greater than it would be outside and (2) the inmate's preexisting medical condition increases his risk of experiencing serious or fatal complications should he become infected. *Id*. Within these outer bounds, however, the Fourth Circuit has not undertaken "to elucidate the shape of qualifying medical conditions;" instead committing the resolution of such questions to the discretion of the district courts. *Id*.

The Fourth Circuit did allow, however, that the Sentencing Commission's policy statement at U.S. Sentencing Guideline ("U.S.S.G.") § 1B1.13 can serve as "helpful guidance." *Id*. at 186 (quoting *McCoy*, 981 F.3d at 282 n.7). *See also Hargrove*, 30 F.4th at 197. In the case of motions for compassionate release filed by the Bureau of Prisons, as opposed to motions filed by defendants, U.S.S.G. § 1B1.13 expounds "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." U.S.S.G. § 1B1.13 background (internal quotation marks omitted). For motions based on an inmate's medical condition, the policy statement articulates a high threshold—i.e., "[t]he defendant is suffering from a terminal illness," *id*. at application note (1)(A)(i), or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," *id*. at application note (1)(A)(ii).

The Court is left with the following understanding. Forsaking resort to any bright-line rules, yet treating as informative the high threshold articulated in U.S.S.G. § 1B1.13, the Court is to draw a conclusion from the totality of relevant circumstances presented by each individual case whether a defendant has identified extraordinary and compelling reasons warranting release. Except that an inmate seeking early release based on the medical risk associated with contracting COVID-19 must at minimum demonstrate both that (1) the risk of contracting the virus in prison is greater than it would be outside and (2) the inmate's preexisting medical condition increases his risk of experiencing serious or fatal complications should he become infected.

### Defendant is Not Eligible for Early Release

Following this course, the Court concludes that the circumstances presented by this case are not so extraordinary and compelling as to warrant early release. First, Defendant has not provided any reason to believe that his risk of contracting the virus would be lessened were he to enter the general population—even considering the limitations on social distancing necessarily present in a prison facility. The Bureau of Prisons website reflects that there are only four active cases of COVID-19 at FCI Fort Dix, which houses 3,210 total inmates.[4] It also provides access to the Bureau's plan to mitigate against the dangers posed by the virus, which courts have recognized to be "a comprehensive, evolving and professional effort to curtail the virus and protect both inmates and staff." *United States v. Feiling*, 453 F.Supp.3d 832, 841 (E.D. Va. 2020). Nor is there anything before the Court to suggest that FCI Fort Dix has failed in any way to take preventative measures to stop the spread of COVID-19 in its facility. *See United States v.*

---

[4] *See COVID-19 Cases*, FEDERAL BUREAU OF PRISONS (last visited June 23, 2022), https://www.bop.gov/coronavirus/.

*Tatum*, No. 3:19-cr-00146, 2022 WL 287695 *2 (E.D. Va. Jan. 31, 2022) (Novak, J.) ("A general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release.").

Second, while Defendant's asthma is recognized by the CDC as an underlying medical condition associated with "higher risk for" severe COVID-19,[5] the Court is unable to find that this heightened risk, without more, is a circumstance so extraordinary and compelling as to warrant release from FCI Fort Dix at this time. Defendant has not provided any reason to think that FCI Fort Dix is unable to care for an inmate with asthma who contracts COVID-19.[6]

### III

"COVID-19 raises medical issues in the prison context that are particularly serious," and "depending on the circumstances, an inmate might well be able to present an extraordinary and compelling reason for release based on COVID-19." *High*, 997 F.3d at 185. But the Court finds

---

[5] *See Underlying Medical Conditions Associated with Higher Risk for Severe COVID-19*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (last visited June 23, 2022).

The CDC has found only that high blood pressure may "possibly" render a person more susceptible to becoming very sick from COVID-19. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 23, 2022). The CDC does not list high cholesterol as a condition associated with risk of complications arising from a COVID-19 infection. And while age remains "the strongest risk factor for severe COVID-19 outcomes," the strongest correlations do not begin until 65 years or older. *See Risk for COVID-19 Infection, Hospitalization, and Death by Age Group*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html (last visited June 23, 2022).

[6] Defendant claims that certain necessary medications have been withheld from him. *See* Dkt. 306 p. 2. While this is not grounds for compassionate release, the Court will direct counsel for the Government and Defendant to look into the matter.

that *this* defendant's circumstances are not so extraordinary and compelling as to outweigh "society's interests in the defendant's continued incarceration and the finality of judgments." *Hargrove*, 30 F.4th at 197. Because early release is therefore not authorized, Defendant's motion will be dismissed.

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this  24th  day of June 2022.

                                                  NORMAN K. MOON
                                                  UNITED STATES DISTRICT JUDGE